IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

LORETTA G. SMITH,

    Plaintiff,

    v.                                    Civil Action No. 8:10-cv-01687-AW

UNIVERSITY OF MARYLAND
UNIVERSITY COLLEGE,

    Defendant.

**MEMORANDUM OPINION**

Plaintiff Loretta G. Smith brings this action against Defendant University of Maryland University College ("UMUC"). Smith asserts federal claims for violation of the First and Fourteenth Amendments, as well as a state law libel claim. Pending before the Court is Defendant's Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss"). The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2011). For the reasons that follow, the Court **GRANTS** Defendant's Motion to Dismiss.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

On June 21, 2010, Plaintiff Loretta G. Smith filed a Complaint wherein she requested damages in the amount of $50,000 and an injunction ordering "reinstatement without prejudice" and "expungement from the record." Doc. 1. The Complaint is a form complaint containing neither factual allegations nor a theory of relief. On June 26, 2010, the Court ordered Smith to supplement her Complaint. Doc. 3. In this Order, the Court explained to Smith that her form complaint was deficient in that it failed to "include any information regarding the actual claim."

1

*Id.* at 1. The Court also cautioned Smith that "her failure to file a supplemental complaint in compliance with the directives contained in this Order will result in the dismissal of her complaint without further notice from this Court." *Id.* at 1–2.

Smith supplemented her Complaint on July 15, 2010. Doc. 5. In the supplement, which the Court treats as an Amended Complaint, Smith alleges that she had previously studied at UMUC and sought to re-register. Smith further alleges that UMUC delayed processing her student loan because of a mix-up in paperwork and the false accusation that she was not a Maryland resident.[1]

Smith states that she went to UMUC to resolve the problem. Allegedly, as Smith talked to a clerk about the relevant forms, a UMUC employee named Courtney Brown interrupted Smith's conversation. Smith admits that she "asked [Brown] to refrain because no one was talking to her." Supposedly, Brown grew belligerent and started threatening Smith. Security intervened in the argument and asked Smith if she wanted to file a complaint, to which Smith agreed. The paperwork was eventually located, whereupon Smith registered as planned.

According to Smith, "the tables turned" after she filed the complaint against Brown. Allegedly, UMUC sent Smith a letter accusing her misconduct in connection with her argument with Brown. Smith specifically asserts that UMUC maligned her reputation in the letter by (1) informing her that it had banned her from UMUC grounds for one year and (2) telling her that she could not reenter UMUC without taking anger management classes. Finally, Smith admits that Brown was "a young black lady."

Based on these allegations, Smith asserts three claims: (1) First Amendment violation; (2) Fourteenth Amendment violation; and (3) libel. UMUC filed its Motion to Dismiss on October

---

[1] The Court accepts this allegation as true. The Court observes, however, that Smith listed a New York address in her form complaint and (erroneously) stated that diversity was the basis for federal jurisdiction.

13, 2011. Doc. 13. Two days later, the Clerk of the Court sent Smith a Rule 12/56 Letter. Doc. 14. The Rule 12/56 Letter states in boldface that "[y]ou have the right to file a response to this motion within seventeen (17) days from the date of this letter." The Letter also warns in boldface that "[i]f you do not file a timely written response, the Court may dismiss the case." Smith has not responded to UMUC's Motion to Dismiss.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In two recent cases, the U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding a motion to dismiss, the court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949–50. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. In so doing, the court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations

devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. LEGAL ANALYSIS

### 1. *First Amendment*

The First Amendment provides as follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Smith's Amended Complaint sounds in a violation of the Free Speech Clause. The nature of Smith's Free Speech Clause claim is that UMUC unconstitutionally retaliated against her because of her argument with Brown and associated complaint.

To state a prima facie case for a Free Speech Clause retaliation claim, the plaintiff must establish three elements. "First, the plaintiff must demonstrate that his or her speech was protected." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (citation omitted). "Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech." *Id.* (citaton omitted). "Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action." *Id.* (citation omitted). Generally, to establish that his or her speech is protected, the free speech retaliation plaintiff must show that "the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern." *See Huang v. Bd. of Gov'rs of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990) (footnote omitted) (citing *Connick v. Myers*, 461 U.S. 138 (1983)).

In this case, Smith's factual allegations fail to state a facially plausible claim that her speech was protected. The allegation that Smith "asked [Brown] to refrain because no one was talking to her" is a fleeting, feisty request pertaining to a petty, private dispute. The same goes for Smith's formal complaint. That is, the Amended Complaint lends itself only to the inference that the formal complaint's allegations focused on Smith's de minimis dispute with Brown. Nowhere does Smith allege that she complained of racial discrimination or any other matter sufficiently substantial to warrant First Amendment protection. Accordingly, the Amended Complaint fails to state a cognizable First Amendment claim.

        2.        *Fourteenth Amendment*

Smith alleges that UMUC discriminated against her based on her race in violation of the Equal Protection Clause of the Fourteenth Amendment. State officials' conduct violates the Equal Protection Clause only insofar as it results from a discriminatory purpose. *Thompson v. U.S. Dept. of Hous. and Urban Dev.*, 348 F. Supp.2d 398, 412 (D. Md. 2005) (citing *Washington v. Davis*, 426 U.S. 229 (1976); *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)). "Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (citation, footnote, and internal quotation marks omitted). "It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (footnote and internal quotation marks omitted). Courts generally look to the totality of the circumstances to ascertain whether discriminatory purpose animates a state actor's adverse action. *Cf. Davis*, 426 U.S. at 242.

In this case, Smith fails to adequately allege a violation of the Equal Protection Clause. Smith's allegations do not plausibly permit the Court to infer that UMUC or Brown intentionally

discriminated against her. The gravamen of Smith's Amended Complaint is that Brown provoked an argument with her and that the university sided with Brown and suspended Smith. Although Smith stresses that she is African American, it is irrational to infer that state actors' adverse actions toward African Americans are automatically discriminatory. In fact, Smith acknowledges that Brown is a "black lady," which weighs against the inference of invidious discrimination. Smith speculates that if she "were a white woman it certainly would not have happened that way." Yet factual allegations that fail to raise the right to relief above a speculative level are insufficient to state a facially plausible claim for relief. Thus, one can conclude *a fortiori* that speculation itself does not satisfy this standard. In short, Smith fails to state a cognizable claim that UMUC purposefully discriminated against her.

    3.    *Libel*

"To establish a prima facie case of libel under Maryland law, a plaintiff must show: (1) that defendants published statements of or concerning plaintiff to a third party; (2) that the statements were false and defamatory; (3) that the statements were published with the degree of fault required by the constitution; [and] (4) that the statements resulted in harm to the plaintiff." *Henry v. Nat'l Ass'n of Air Traffic Specialists, Inc.*, 836 F. Supp. 1204, 1210 (D. Md. 1993) (alteration in original) (citation and internal quotation marks omitted).

In this case, Smith's Amended Complaint fails to sufficiently state that UMUC published the allegedly libelous statements to a third party. Unequivocally, the Amended Complaint states that "[UMUC] wrote me a letter telling me I needed anger management . . . ." Thus, the Amended Complaint is devoid of facts from which one could plausibly infer that UMUC communicated the contents of the letter to a third party. Furthermore, the Amended Complaint fails to adequately allege that the supposedly libelous statements caused Smith harm. Smith

simply states that UMUC wrote a letter in which it libeled her by informing her that it had banned her from UMUC grounds and that she could not reenter UMUC without taking anger management classes. Arguably, the actions that underlie these statements might have caused Smith harm (i.e. the decision to ban her from the university). The Amended Complaint, however, contains no allegations from which one could plausibly infer that the *statements themselves* caused Smith harm. Accordingly, the Amended Complaint fails to state a cognizable libel claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. 13), with the consequence that the Court dismisses Smith's Amended Complaint *with prejudice*.

| November 18, 2011 | /s/ |
|---|---|
| Date | Alexander Williams, Jr. |
| | United States District Judge |